IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**ELY SAUCEDO**,

    Plaintiff,                               No. 3:11-cv-00813-MO

    v.                                    OPINION AND ORDER

**BANK OF AMERICA, N.A., et al.,**

    Defendants.


**MOSMAN, J.**,

    This case involves claims by Ely Saucedo against Bank of America, N.A. ("BOA"), Bank of America Corporation ("BOA Corp."), and BAC Home Loans Servicing, LP ("BAC Servicing"), arising out of the modification of Mr. Saucedo's mortgage. Defendants collectively moved to dismiss all claims [6]. For the reasons explained below, their motion is granted in part and denied in part.

## BACKGROUND

    Mr. Saucedo purchased property in Wilsonville, Oregon around October of 2003, primarily for personal use.[1] In June of 2009 he lost his employment and applied to BOA for a mortgage modification, which allegedly led to a loan modification agreement that reduced his loan payments from $1,196.92 to $763.48. Mr. Saucedo alleges that he was told that if he complied with the loan modification agreement, he would not be reported delinquent on his loan to credit bureaus. He alleges that he made all payments as required by BOA.

---

[1] The facts herein are those alleged in the complaint and are taken as true at this stage.

In June of 2010, BOA informed Mr. Saucedo that his request for a permanent loan modification was denied, after which he began receiving notifications that his credit cards were either cancelled or limiting his credit limit.  Mr. Saucedo alleges that he then lost work as a general contractor because he was unable to obtain a bond because BOA was reporting him 120 days delinquent on his mortgage.  Mr. Saucedo alleges that he disputed this "false delinquency" to the major credit bureaus and attempted to obtain information about the delinquency reports and the denial of the loan modification but was unable to do so.  The loan modification was eventually approved sometime around November 9, 2010, and was backdated to the date of Mr. Saucedo's original loan modification request.  Sometime around this date (Mr. Saucedo does not clearly allege when), Mr. Saucedo began receiving letters "concerning the foreclosure on his property" by BOA.  There are no allegations that defendants actually attempted a foreclosure.

Mr. Saucedo brings five claims for relief against defendants based on the Real Estate Settlement Procedures Act ("RESPA"), state law, and the Fair Credit Reporting Act ("FCRA").

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  A court need not accept as true legal conclusions.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

**DISCUSSION**

I.    **RESPA**

Mr. Saucedo's first claim alleges violations of RESPA for BOA's alleged failures to respond adequately to qualified written requests ("QWRs") sent by Mr. Saucedo.  Mr. Saucedo alleges that he "issued requests to Bank of America on several occasions, both orally and in the form of a written qualified requests [sic], on or about August 19, 2010, September 8, 2010, October 18, 2010, February 17, 2011 and April 26, 2011, or by email, requesting information in compliance with RESPA."  He further alleges that he "either did not receive a response from defendants to the written requests within 60 days of receipt . . . , or the responses were less than full and fair disclosures of information, or did not address the questions that were presented to defendants."  I agree with defendants that Mr. Saucedo has not sufficiently alleged the existence of valid QWRs or that there was an actual violation of RESPA even if there were valid requests.

Mr. Saucedo's allegation that he sent "written qualified requests" is insufficient by itself to establish that any of his communications with BOA constitute valid QWRs.  Among other requirements, a QWR must relate to the "servicing" of a loan, 12 U.S.C. § 2605(e)(1)(A), but Mr. Saucedo has failed to adequately allege his requests were related to servicing, as that term is defined by RESPA.  Mr. Saucedo alleges that he requested information about "the basis for its reporting the false delinquency and the denial of the loan modification."  The denial of a loan modification is not "servicing."  *See Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009); *Phillips v. Bank of Am. Corp.*, No. 10-0400, 2010 WL 1460824, at *4 (N.D. Cal. April 9, 2010).  And based on the limited information in his complaint, it is unclear whether Ms. Saucedo's inquiries regarding "false delinquency" related to anything but loan modification.  Mr. Saucedo attempts to clarify the servicing issue in his briefing by stating that his inquiries to BOA concerned "defendants . . . not properly allocating scheduled periodic

payments," but this does nothing more than reiterate the statutory definition of servicing, which is insufficient.

Moreover, the allegations regarding the adequacy of the responses made by BOA also amount to mere "legal conclusions," and are not supported by any factual allegations.  Mr. Saucedo does not state how the defendants' responses violated RESPA, but merely states that the responses were not timely or were not "full and fair disclosures."  Mr. Saucedo does not identify how long responses actually took and his repeated conclusory use of the phrase "full and fair disclosures" does not help BOA determine how the responses might have been inadequate. Accordingly, Mr. Saucedo's first claim fails.[2]

## II.    Invasion of Privacy

Mr. Saucedo's second claim alleges invasion of privacy based on an intrusion upon seclusion theory.  In his complaint, Mr. Saucedo states, without any further factual support, "Defendants' conduct intentionally intruded on plaintiff's solitude, seclusion and privacy. Defendants' conduct was highly offensive to plaintiff and would be highly offensive to a reasonable person.  Defendants acted with malice or willful intent to injure plaintiff."  These allegations are precisely the kind of "formulaic recitation of the elements of a cause of action," without any supporting facts, that the Supreme Court has held inadequate.  *Twombly*, 550 U.S. at 555.

Although Mr. Saucedo attempts to clarify in his briefing that he considers the letters he received concerning the foreclosure of his home to serve as the impetus for the invasion of privacy claim, this still fails to meet the pleading standard.  An invasion of privacy claim based on an intrusion upon seclusion theory requires "(1) an intentional intrusion, physical or

---

[2] It is also not clearly alleged in the complaint that some or all of the requests were *in writing,* as required by RESPA.  Nor is it clearly alleged that the requests were appropriately addressed to the loan's *servicer,* as RESPA mandates.

otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person." *Mauri v. Smith*, 929 P.2d 307, 310 (Or. 1996). First, the additional specificity Mr. Saucedo provides in the briefing regarding this theory is nowhere in his complaint. Moreover, even if Mr. Saucedo is correct that debt collection activities might in theory serve as the basis for a claim of invasion of privacy in Oregon, he has not put forth sufficient factual allegations to show how his solitude has been intentionally intruded upon, or how such an intrusion would be offensive to a reasonable person. Simply because debt collection activities might invade privacy does not mean all debt collection activities trigger intrusion of privacy claims. I therefore dismiss this claim.

## III.   Breach of Duty of Good Faith and Fair Dealing

Mr. Saucedo's third claim is for breach of the duty of good faith and fair dealing. Mr. Saucedo alleges that the agreement that was breached by BOA was the agreement that "if he made all the payments as outlined in this temporary loan modification, because he was making the required payments, Bank of America would not report that plaintiff was delinquent on his loan to the credit bureaus."

In order to allege a claim for breach of the duty of good faith and fair dealing, there must exist a valid contract to which the duty attaches. *See Pac. First Bank v. New Morgan Park Corp.*, 876 P.2d 761, 766–68 (Or. 1994). Based on the complaint and subsequent briefing, the only conduct by Mr. Saucedo that could be viewed as consideration for a contract was his making reduced payments as outlined in the temporary loan modification. There is no allegation in Mr. Saucedo's complaint that he did or agreed to do anything other than what he was obligated to do under the terms of his original loan agreement. In Oregon,

> A promise to do what the promisor is already bound to do cannot be a consideration, for, if a person gets nothing in return for his promise but that to which he is already entitled, the consideration is unreal. Therefore, as a general rule, the performance of, or promise to perform, an existing legal obligation is not a valid consideration.

*Hoskins v. Powder Land & Irrigation Co.*, 176 P. 124, 126 (Or. 1918) (quotation omitted); *see also Barinaga v. JP Morgan Chase & Co.*, 749 F. Supp. 2d 1164, 1173–74 (D. Or. 2010).  Under Oregon law, Mr. Saucedo's reduced payments of $763.48 are not sufficient to be adequate consideration.  This claim therefore fails.

## IV.    **FCRA**

Mr. Saucedo alleges that defendants received notice that he was disputing defendants' characterization of his credit.  He alleges that the defendants' then wrongfully failed to change the information they were reporting.  And he alleges he suffered damages because his wrongfully reported credit score affected his business.  Defendants argue that he has not alleged enough facts to state a claim under the FCRA because he fails to identify when the credit reporting at issue occurred and whether the credit reporting was later modified.  I find that Mr. Saucedo has stated plausible FCRA claims.

Under 15 U.S.C. § 1681s-2(b) of the FCRA, upon receipt of a notice from a credit reporting agency ("CRA") of a dispute, the furnisher of information is required to investigate within specified time limits to determine the accuracy or completeness of the information provided to the CRA and must modify, delete, or block reporting information that is inaccurate, incomplete, or cannot be verified.  The FCRA also has several provisions that create liability for violations.  Mr. Saucedo's fourth claim alleges willful noncompliance under 15 U.S.C. § 1681n relating to re-investigations of credit reporting disputes, and his fifth claim alleges negligent noncompliance under 15 U.S.C. § 1681o.  To succeed under a § 1681s-2(b) claim, a plaintiff must establish the following: (1) the furnisher of information received notice of the dispute from

a CRA, (2) it failed to perform a reasonable investigation upon receiving such notice, (3) the failure to investigate was willful or negligent, and (4) plaintiff was harmed. *See* 15 U.S.C. § 1681s-2(b); *Dimedio v. HSBC Bank*, No. 08-5521, 2009 WL 1796072, at *8 (D. N.J. June 22, 2009).

While I agree with the defendants that the allegations are sparse here, at this stage of litigation I find Mr. Saucedo has stated sufficient factual allegations to meet the pleading requirements. He has identified the credit reporting at issue, alleges it was false, includes allegations as to why it was false, alleges that he tried to explain why it was false but his attempts were ignored, and alleges he was harmed in a particular way. And it would be difficult for him to explain at this stage precisely how defendants' follow-up investigation was negligent or willfully inadequate. Accordingly, I deny defendants' motion to dismiss with respect to the two FCRA claims.

## CONCLUSION

For the foregoing reasons, I GRANT IN PART and DENY IN PART defendants' motion to dismiss [6]. That motion is granted as to the RESPA, invasion of privacy, and breach of good faith and fair dealing claims. Those claims are dismissed without prejudice. The motion is denied as to the FCRA claims.

IT IS SO ORDERED.

DATED this __1st__ day of December, 2011.

/s/ Michael W. Mosman_____
MICHAEL W. MOSMAN
United States District Court